1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:24-mc-00411-DC-AC |
|---|---|
| Plaintiff, | |
| v. | CONSENT JUDGMENT OF FORFEITURE |
| APPROXIMATELY $32,600.00 IN U.S. CURRENCY, | |
| Defendant. | |

On January 14, 2025, Plaintiff United States and Claimant Deaareon Fleming filed a stipulation for the entry of a consent judgment of forfeiture in this action. (Doc. No. 6.)

Pursuant to that stipulation, the court finds the following:

1.      On May 7, 2024, agents with the Drug Enforcement Administration ("DEA") contacted Deaareon Fleming ("Fleming" or "Claimant") at the Sacramento International Airport in Sacramento, California. Approximately $32,600.00 in U.S. Currency (hereafter "Defendant currency") was seized from Fleming during this encounter.

2.      The DEA commenced administrative forfeiture proceedings, sending direct written notice to all known potential claimants and publishing notice to all others. On or about July 19, 2024, the DEA received a claim from Fleming asserting an ownership interest in the Defendant currency.

3.      The United States represents that it could show at a forfeiture trial that on May 7,

1

1   2024, Fleming was scheduled to travel on American Airlines Flight 2087 from Dallas, Texas to

2   Sacramento, California, with his origin of travel that day being Atlanta, Georgia. Law

3   enforcement received information regarding a suspicious ticket purchase by Fleming, including

4   the purchase of his ticket one day prior to his travel with his return trip approximately 24 hours

5   later.

6           4.      The United States represents it could further show at a forfeiture trial that on

7   May 7, 2024, law enforcement responded to the Sacramento International Airport and

8   positioned themselves at the outdoor baggage drop off area associated with Fleming's incoming

9   fight. They located a blue hard-shell suitcase that had indicators of narcotics trafficking, to

10  include the suitcase was new, still had plastic wrap on the handles, and was very light in weight

11  considering the size of the suitcase. A drug detection dog alerted to the odor of narcotics on the

12  suitcase. Law enforcement detected a strong odor of marijuana coming from within the suitcase.

13  The suitcase had a tag with Fleming's name on it. Law enforcement then discovered that

14  Fleming was not on the flight but was scheduled to arrive at a later time that day, even though

15  his suitcase was on the current flight. Law enforcement secured the suitcase.

16          5.      The United States represents that it could further show at a forfeiture trial that

17  law enforcement returned to the airport later that afternoon and waited for Fleming's updated

18  flight, American Airlines flight 2078 to arrive. They had control of Fleming's blue suitcase in

19  Terminal A. When Fleming noticed law enforcement with his suitcase, he pulled out his cell

20  phone, brought it up to his ear, and then diverted his walking path away from law enforcement.

21  They approached Fleming and he confirmed his identity and that the suitcase belonged to him.

22  Law enforcement asked Fleming if he had any narcotics in the suitcase and he responded, "there

23  shouldn't be."

24          6.      The United States represents that it could further show at a forfeiture trial that

25  another law enforcement officer and another drug detection dog approached Fleming. The drug

26  detection dog immediately went to the blue satchel bag that Fleming was carrying and alerted to

27  the odor of narcotics on it. Law enforcement asked for consent to search the suitcase to which

28  Fleming consented. While law enforcement was searching the suitcase, they asked Fleming how

1   much currency he was traveling with. Fleming initially stated, "not a lot." When law

2   enforcement asked Fleming for clarification, he said, "maybe 10-15," meaning $10,000–

3   $15,000. When asked if they could see the currency Fleming zipped open the blue satchel bag

4   he was carrying and showed them several large stacks of cash in various denominations. Based

5   on their training and experience, law enforcement believed there was more than $10,000–

6   $15,000. Law enforcement asked Fleming if he would accompany them to a separate room to

7   complete the search and Fleming agreed.

8          7.      The United States represents that it could further show at a forfeiture trial that

9   once in the separate room, the suitcase and satchel were placed on the table where they

10  continued their search. The drug detection dog was deployed again, and he immediately put his

11  paw on the table and alerted on the blue satchel bag.

12         8.      The United States represents that it could further show at a forfeiture trial that

13  law enforcement found several packs of pre-packaged, personal use marijuana packages inside

14  the large blue suitcase, along with three orange-colored pills, later determined to be Adderall.

15  Fleming admitted they were his, but he did not know the marijuana was inside the suitcase

16  because he did not pack it.

17         9.      The United States represents that it could further show at a forfeiture trial that

18  law enforcement continued with a search of the blue satchel bag and found five stacks of cash.

19  Law enforcement asked Fleming what he was going to do with the cash and he stated that he

20  was coming from Atlanta to buy "Double XL Bulldogs." Fleming said he was going to drive

21  from Sacramento either to Antioch or Pittsburg to purchase the dogs and that he did not know

22  where he was going to stay yet. Fleming initially said that he was in California for a few days,

23  but when asked if he had a return ticket, Fleming stated that he was flying out tomorrow (the

24  following day). Fleming claimed he bred dogs for a living. A later bank count of the cash seized

25  from Fleming's blue satchel bag totaled $32,600.00— the Defendant currency.

26         10.     The United States could further show at a forfeiture trial that the Defendant

27  currency is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6).

28         11.     Without admitting the truth of the factual assertions contained above, Claimant

3

1    specifically denying the same, and for the purpose of reaching an amicable resolution and

2    compromise of this matter, Claimant agrees that an adequate factual basis exists to support

3    forfeiture of the Defendant currency. Fleming acknowledged that he is the sole owner of the

4    Defendant currency, and that no other person or entity has any legitimate claim of interest therein.

5    Should any person or entity institute any kind of claim or action against the government with

6    regard to its forfeiture of the Defendant currency, Claimant shall hold harmless and indemnify the

7    United States, as set forth below.

8         12.    This Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1345 and 1355,

9    as this is the judicial district in which acts or omissions giving rise to the forfeiture occurred.

10        13.    This Court has venue pursuant to 28 U.S.C. § 1395, as this is the judicial district in

11   which the Defendant currency was seized.

12        14.    The parties herein desire to settle this matter pursuant to the terms of a duly

13   executed Stipulation for Consent Judgment of Forfeiture.

14        Based on the above findings, and the files and records filed in this action, the court orders

15   as follows:

16        1.    The court adopts the Stipulation for Consent Judgment of Forfeiture entered into

17   by and between the parties (Doc. No. 6).

18        2.    Upon entry of this Consent Judgment of Forfeiture, $18,000.00 of the

19   Approximately $32,600.00 in U.S. Currency, together with any interest that may have accrued on

20   the total amount seized, shall be forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6),

21   to be disposed of according to law.

22        3.    Upon entry of this Consent Judgment of Forfeiture, but no later than 60 days

23   thereafter, $14,600.00 of the Approximately $32,600.00 in U.S. Currency shall be returned to

24   Claimant Deaareon Fleming through his attorney Eric A. Pack.

25        4.    The United States of America and its servants, agents, and employees and all other

26   public entities, their servants, agents, and employees, are released from any and all liability

27   arising out of or in any way connected with the seizure or forfeiture of the Defendant currency.

28   This is a full and final release applying to all unknown and unanticipated injuries, and/or damages

1 arising out of said seizure or forfeiture, as well as to those now known or disclosed. Claimant

2 waived the provisions of California Civil Code § 1542.

3      5.     No portion of the stipulated settlement, including statements or admissions made

4 therein, shall be admissible in any criminal action pursuant to Rules 408 and 410(a)(4) of the

5 Federal Rules of Evidence.

6      6.     All parties will bear their own costs and attorney's fees.

7      7.     Pursuant to the Stipulation for Consent Judgment of Forfeiture filed herein, the

8 court enters a Certificate of Reasonable Cause pursuant to 28 U.S.C. § 2465, that there was

9 reasonable cause for the seizure of the above-described Defendant currency.

10

11      IT IS SO ORDERED.

12 Dated:   **January 16, 2025**         _____

Dena Coggins

13                            United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28